UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 21-CV-667

| | |
|---|---|
| **MOHAMED ALASSANE KARZO**<br><br>**Plaintiff**<br><br>v.<br><br>**MATADOR RECORDS, Inc.,**<br>**DOMINO PUBLISHING COMPANY of**<br>**AMERICA, Inc., REDEYE, Inc.,**<br>**M'DOU MOCTAR,**<br>**MAHAMADOU SOULEYMANE,**<br>**MICHAEL COLTUN,**<br>**AHMOUDOU MADASSANE, and**<br>**SOULEYMANE IBRAHIM**<br><br>**Defendants** | **COMPLAINT**<br><br>**WITH DEMAND FOR TRIAL BY JURY** |

**NOW COMES** Plaintiff Mohamed Alassane Karzo, by and through Counsel, and pursuant to respectfully pleads to this Court the following:

### JURISDICTION AND VENUE

1. This action for damages and injunctive relief arises under the United States Copyright Act (17 U.S.C. § 101, et seq.) with other pendant state claims.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, § 1338 and § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) and (3).

### PARTIES

4. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

5. Plaintiff Mohamed Alassane Karzo (Karzo) is a resident of Agadez, Niger.

6. Defendant Matador Records, Inc. (Matador), is a New York corporation with its headquarters located at 134 Grand Street, New York, NY, 10013.

7. Redeye, Inc., (d/b/a Red Eye Distribution) (Red Eye), a North Carolina corporation with its principal office at 505 Eno St., Hillsborough, NC 27278-2357, distributes Matador's recordings.

8. Matador has directed sales to the state of North Carolina.

9. Matador has sold sound recordings to consumers in the state of North Carolina.

10. Matador has availed itself of the rights and privileges of the laws and protections of North Carolina.

11. Defendant Domino Publishing Company of America, Inc. (Domino), is a New York corporation with its headquarters located at 20 Jay St. Ste. 626, Brooklyn, NY 11201-8329.

12. Defendant Mahamadou Souleymane (Souleymane), known professionally by the stage name "M'Dou Moctar," is a resident of Tahoua, Niger and can be served through his representative at Another Management Company, LLC, 20 Jay St. Ste. 626, Brooklyn, New York.

13. Defendant M'Dou Moctar (the Band) is comprised of the individuals named herein and is represented by, and can be served through, its representative at Another Management Company, LLC, 20 Jay St. Ste. 626, Brooklyn, NY.

14. Michael Coltun (Culton) is a resident of New York, New York, and can be served personally there.

15. Defendant Ahmoudou Madassane (Madassane) is a resident of Agadez, Niger and can be served through his representative at Another Management Company, LLC, 20 Jay St. Ste. 626, Brooklyn, NY 11201-8329.

16. Souleymane Ibrahim (Ibrahim) is a resident of Agadez, Niger and can be served through his representative at Another Management Company, LLC, 20 Jay St. Ste. 626, Brooklyn, NY.

## FACTUAL ALLEGATIONS

17. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

18. Mohamed Alassane Karzo is an icon of Tuareg music of the Sahel region of Africa.

19. Karzo was born in Arlit, Niger, and grew up in the shadow of his uncle Abdallah Ag Oumbadougou, the godfather of Tuareg music.

20. Karzo is a guitarist, singer and songwriter and has grown his roots in Agadez, a small town in the center of Niger.

21. Karzo's music is written in French and Tamasheq, a language of nomadic traders known as Tuareg people that dates back thousands of years.

22. Karzo started writing music around 2002, becoming well known regionally in the late 2000s, and gaining a lot of popularity by 2008.

23. For the last 20 years Karzo has written, developed and recorded his unique style of Tuareg music. To spread his work, he has performed hundreds of shows, touring several countries in Western Africa. Thousands have seen him live and heard his music on the radio and on the internet.

24. His songs, in particular C'est La Vie and Enfant's de L'Air, are celebrated and sung by Tuareg youth around Niger and bordering countries.

25. He was known during those years by the name Mohamed "Petit".

26. Sometime in or about 2006 or 2007, Karzo wrote a beautiful song called Mafelawen, in the Tamasheq language.

27. It is a haunting tune and, in Karzo's words, "Mafelawen is about Tuareg people and the difficulties that prevent their development."

28. The chorus of Mafelawen, as it is written in the Tamasheq language, says, "Mafelawen. Mafeliga? Ayitmanin, mafelawen?"

29. The chorus translates roughly to say, "Tell me why. Why is it? My people, why?"

30. Karzo cares deeply about his country Niger, which in 2018 and 2019 was ranked 189th out of 189 countries in the United Nations' Human Development Index.

31. Karzo recalls that the first person for whom he played Mafelawen was his friend Abdoul Aziz.

32. Karzo began playing the song around Agadez and the local towns. He is a prolific performer, and many people heard his music and loved Mafelawen.

33. In 2012, Souleymane was living in Tchintabaraden, Niger, a town about 260 miles from Agadez.

34. As a traveling musician, Souleymane traveled to Agadez to perform quite frequently with his band M'Dou Moctar.

35. The Tuareg music scene in Niger is very small; everyone knows each other. The guitar scene is even smaller.

36. Karzo, Souleymane, Coltun, Ahmoudo and Ibrahim were constantly in the same small circles.

37. It is beyond doubt that as often as Mafelawen was played by Karzo and other musicians, and as small as the Tuareg community is, Souleymane, Coltun, Madassane, and Ibrahim were certain to have heard the song many times.

38. More specifically, in early 2011, Karzo was introduced to Souleymane when Souleymane was touring through Agadez, where Karzo lived at the time.

39. Karzo recalls this time specifically because it was during the political campaigns and prior to President Mahamadou Issoufou's inauguration as President on April 7, 2011.

40. Souleymane was traveling to the Tchirozerine Department of the Agadez Region of Niger.

41. Souleymane was a political delegate to supervise a polling station.

42. Souleymane was staying with friends in Misrata, a neighborhood on the west side of Agadez.

43. As is the custom, they decided to play music together at the house in Misrata.

44. Souleymane needed to borrow a guitar and a mutual acquaintance introduced him to Karzo.

45. Souleymane came to Karzo's home to borrow the guitar.

46. When they met, Karzo and Souleymane played music together, which is almost obligatory among Tuareg musicians.

47. Karzo played several of his songs for Souleymane, including Mafelawen.

48. Between the ubiquity of Karzo's music and the night when Karzo played the song in Souleymane's company, Souleymane knew that Mafelawen was Karzo's song.

49. At no time did any Defendant request permission to use Mafelawen for any reason.

50. In the passing years, Karzo has worked diligently, continuing to build on his reputation as a competent guitarist, unique vocalist and inspiring song writer.

51. Karzo's goal is to come to the United States, a place he longs to play his music and a place where he believes his dreams can be realized.

52. The United States lay before him, an untapped market who had not yet heard him, but who could be receptive to him if marketed properly and given his best music.

53. Karzo's songs are meant to be positive and relatable to any person of any type. Karzo's music is inclusive, not exclusive.

54. Karzo's songs are fit for any company and can be sung and enjoyed by everyone, from children to adults and members of any community.

55. He has a unique ability to write music with very wide appeal.

56. In 2017, Karzo found a representative in the United States who could help develop a plan and find support for touring the US.

57. For the next several years Karzo continued to work diligently to make the trip, only to be forestalled by the pandemic of 2020.

58. Despite this and other major setbacks, Karzo's spirits remain high. He is focused on his goal; to show the US who he is, what his music is about and what they have been missing.

59. As part of this effort, Karzo registered Mafelawen and other songs with the United States Copyright Office, securing Registration Number SRu001455294 for a collection entitled "Mafelawen and 9 Other Unpublished Works."

60. Meanwhile, there was an infringement of Karzo's works of which he had no knowledge.

61. Apparently, when he heard Mafelawen, Souleymane liked the song enough that he took the chorus and tune, including the guitar parts, and developed his own song, Afrique Victime, built around Mafelawen.

62. Afrique Victime uses the chorus of Mafelawen, including all of the lyrics and the music, exactly as it is in Mafelawen.

63. This is not a similar song, it is an exact copy, note for note, word for word.

64. The chorus of Afrique Victime, as it is written in the Tamasheq language, says, "Mafelawen. Mafeliga? Ayitmanin, mafelawen?"

65. The rest of Afrique Victime is the tune of Mafelawen with different words, but the same guitar parts, chord structure and changes, though at an increased tempo.

66. Upon information and belief, Souleymane has been performing Afrique Victime since 2012, in violation of Karzo's ownership interests in Mafelawen.

67. Moreover, Souleymane discarded Karzo's verses and, unfortunately, created his own lyrics which carry a specific political tone, including praise for noted Libyan terrorist Muammar Gaddafi.

68. This is very distressing for Karzo.

69. Mafelawen was meant to be Karzo's introduction to the United States listening audience.

70. In a time of great political tumult, Karzo wanted to bring music to people that would heal them and bring them together.

71. Now the Defendants have robbed him of that song, preempting Karzo's entry into the US market with a divisive rip-off of Karzo's music; a desecration of Mafelawen that praises a terrorist, against whom the United States engaged in military action.

72. Meanwhile, the Band's introduction into the US market was enormous.

73. Souleymane and his band M'Dou Moctar, have been featured in publications as well-known as Rolling Stone Magazine (on May 20, 2021).

74. He was also featured in Guitar World on May 18, 2021, complete with an embedded video of Afrique Victime.

75. The press coverage has been so overwhelming for Afrique Victime that the music and lyrics of Mafelawen will now be forever linked with Souleymane and the Band.

76. The band members gave themselves writing credits without mentioning Karzo in BMI Work ID number 43976187, which gives writing credits to "Moctar M'Dou," "Coltun Michael," and "Madassane Ahmoudou."

77. It is telling, however, that neither Souleymane, the Band, Matador, Domino, Redeye, nor any of the other band members filed for copyright protection with the United States Copyright Office.

78. Instead, they publicized the infringing work at same time as the release date by appearing in articles online and in magazines.

79. The Defendants never mention Karzo; instead, they designated a false origin for the song by saying it originated with the Band and its members.

80. The irony of the Defendants stealing Karzo's song and using it in a work that decries stealing the work and resources of Africans is not lost on him.

81. Souleymane has stated, "I am a person who likes to listen for a new thing." [1]

82. Souleymane found a "new thing" in Mafelawen and has taken it and published it as his own.

83. At this point Karzo has been injured by the intentional infringement of his copyright and ownership rights in Mafelawen and has lost his opportunity to present Mafelawen as his unique, original composition to a new, very desirable market and his dream has been crushed.

84. All of the acts of all Defendants were done intentionally, willfully and with malice.

## **VIOLATION OF 17 U.S.C. § 101, *et. seq.***

85. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

86. Karzo is the owner of all rights in and to Mafelawen.

---

[1] M'Dou Moctar, *Guitar World*, May 18, 2021 (https://www.guitarworld.com/features/mdou-moctar-afrique-victime)

87. Mafelawen is registered with the United States Copyright Office in accordance with 17 U.S.C. U.S.C. § 101, *et. seq.*, in which he claimed that he is the sole author of the words and music of Mafelawen.

88. The Registration Number is SRu001455294.

89. The title is Mafelawen and 9 Other Unpublished Works.

90. Mafelawen is original with Karzo and copyrightable subject matter under the laws of the United States.

91. Karzo is currently, and at all relevant times has been, the exclusive owner of all right, title and interest in and to the copyright in Mafelawen.

92. As the exclusive owner of all right, title and interest in and to the copyright in Mafelawen, Karzo owns the exclusive rights to, among other things, publish, reproduce and distribute Mafelawen, create derivate works from Mafelawen and to authorize others to do the same.

93. Karzo did not grant any permission or authority to any of the Defendants for the reproduction, distribution or publication of Mafelawen as reproduced, distributed and published in the infringing recording Afrique Victime and in the marketing materials, advertising, websites, social media sites and other publicity for the infringing recording (hereinafter, collectively, the "Infringing Recording Materials").

94. Karzo did not grant any permission or authority to any of the Defendants for the reproduction, distribution or publication of Mafelawen as reproduced, distributed and published in Afrique Victime and in the marketing materials, advertising, websites, social media sites and other publicity for the publication of Afrique Victime (hereinafter, collectively, the "Publication Marketing Materials").

95. On or about May 21, 2021, the Defendants, through Defendants Matador, Domino and Red Eye, released the album Afrique Victime.

96. In this infringing publication, the band members credited themselves with writing the song, Afrique Victime, giving no credit to Karzo.

97. On information and belief, Karzo alleges that each of the Defendants, for commercial advantage and private financial gain, without Karzo's permission, consent, knowledge, authority or license, have reproduced, distributed, published, created derivative works from, and/or otherwise exploited Mafelawen on the Infringing Recording Materials and in the Infringing Publication Marketing Materials.

98. Karzo is informed and believes, and on that basis alleges, at all relevant times herein, Defendants contributed to the copyright infringement referenced herein, and authorized and/or ratified same and/or knowingly participated therein for financial gain.

99. Karzo intends to amend this complaint to include other instances of unauthorized use, reproduction, distribution and publication of Mafelwaen by Defendants, and each of them, as such instances become known through the discovery process.

100. As a direct and proximate result of each of the Defendants' acts of copyright infringement as described herein, Karzo has suffered injuries and damages including, but not limited to, just compensation for the infringing uses of Mafelawen by the Defendants.

101. As a result of each Defendant's infringement of Karzo's exclusive rights under copyright, Karzo is entitled to the remedies set forth under 17 U.S.C. § 504.

102. Pursuant to 17 U.S.C. §§ 502 and 503, Karzo is entitled to injunctive relief prohibiting each Defendant from further infringing Karzo's copyright and ordering that each Defendant deliver up to Karzo all infringing copies of the Infringing Recording and Mafelawen for destruction.

103. Because of the flagrant and egregious violations of Karzo's rights he is entitled to recovery of full coasts and reasonable attorney's fees pursuant to 17 U.S.C. § 505.

**N.C. Gen. Stat. § 75-1.1– UNFAIR AND DECEPTIVE ACTS AND PRACTICES**

104. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

105. Defendants' acts constitute unfair and deceptive acts by creating a likelihood of confusion to the irreparable injury of Karzo.

106. The acts as described herein are in and affect commerce.

107. Karzo has been injured by the acts of the Defendants as described herein.

108. The gravamen of this claim is the loss of goodwill that Karzo has experienced at the hands of the Defendants and a claim that is not based on the copyright held by Karzo.

109. On information and belief, Defendants acted with full knowledge of Plaintiff's authorship of Mafelawen and without regard to the likelihood of confusion of the public created by Defendants' conduct.

110. Defendants' actions demonstrate an intentional, willful, and malicious effort to falsely and fraudulently deny Plaintiff the goodwill associated with the authorship of Mafelawen to Karzo's great and irreparable harm.

111. As a result of Defendants' actions, Karzo has been damaged in an amount to be determined at trial.

112. Pursuant to N.C. Gen. Stat. § 75-8, each week that these violations continue is a separate offence.

113. Pursuant to N.C. Gen. Stat. § 75-16, Karzo is entitled to treble the damages fixed by the jury verdict.

114. Pursuant to N.C. Gen. Stat. § 75-16.1, Karzo is entitled to an award of reasonable attorney fees.

## ACCOUNTING

115. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

116. As a result of Defendants' actions as alleged herein, Defendants have received and/or retained money, a portion of which is due to Karzo.

117. The amount of money due from Defendants to Karzo is unknown to Karzo and cannot be ascertained without an accounting of all transactions by, between and among the Defendants, between Defendants and various third parties and an accounting of all transactions involving Mafelwen and Afrique Victime.

118. Karzo has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the Defendants.

## DEMAND FOR JURY TRIAL

119. Plaintiff exercises his right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiff respectfully requests the following relief from the Court:

1. That Defendants, and each of them, be found to have infringed Karzo's copyright in Mafelawen, pursuant to 17 U.S.C. §501, *et seq.*;

2. That Defendants, and each of them, be required to account to Karzo for all gains, profits, benefits and advantages derived from their respective infringement of Karzo's copyright deemed held in constructive trust for the benefit of Karzo;

3. For entry of preliminary and permanent injunctions providing that each Defendant shall deliver to Karzo all printed copies of Afrique Victime and any other infringing copies and/or

reproductions of Mafelawen, and all other materials containing such infringing copies in each Defendant's possession, custody or control, for destruction pursuant to 17 U.S.C. § 503;

4. That Defendants, and each of them, be required to pay an award of actual damages (with interest thereon at the highest legal rate) as a result of the infringement, and any profits of the Defendants that are attributable to each act of infringement and are not taken into account in computing the actual damages pursuant to 17 U.S.C. § 504(c)(1);

5. That Defendants, and each of them, be required to pay an award of statutory damages (with interest thereon at the highest legal rate) as a result of the willful infringement pursuant to 17 U.S.C. 504(c)(2).

6. That Defendants, and each of them, be required to pay Karzo's full costs in this action, including reasonable attorneys' fees as the Court may allow pursuant to 17 U.S.C. § 505; and

7. That Defendants, and each of them, file within (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

8. That Karzo be awarded Defendants' actual and compensatory damages and profits derived by reason of said acts, or as determined by an accounting, pursuant to 17 U.S.C. § 504(b);

9. That, on account of Defendants' willful, malicious and deliberate conduct, and to deter such conduct in the future, Karzo be awarded punitive damages;

18. That Karzo be granted injunctive relief pursuant to 17 U.S.C. § 502; specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

   a. reproducing, displaying, distributing or otherwise exploiting Mafelwaen;

   b. directly or indirectly engaging in false statements or other fraudulent conduct regarding the authorship of Mafelawen;

   c. making or inducing others to make any false, misleading or deceptive statements of fact, or representations of fact in connection with Mafelawen;

19. That Defendants file within (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

20. That Defendant be ordered to correct any erroneous impression persons may have derived concerning the authorship of Mafelawen including without limitation:

   a. the placement of corrective advertising in all media in which the false claim of authorship of Mafelawen originally appeared including, but not limited to, all of Defendants' social media accounts informing viewers of all misrepresentations regarding Mafelawen; and,

   b. the removal of Mafelawen from any media over which Defendants exercise dominion and authority including, but not limited to, from the Defendants' websites and social media accounts.

21. That, on account of Defendants' willful, malicious and deliberate conduct, and to deter such conduct in the future, Karzo be awarded punitive damages;

22. That Defendants, and each of them, be required to provide a complete accounting to Karzo of all transactions by, between and among the Defendants, between Defendants and various third parties and an accounting of all transactions involving Afrique Victime;

23. A finding that Karzo is entitled to treble the damages fixed by the jury verdict, pursuant to N.C. Gen. Stat. § 75-16;

24. A finding that Karzo is entitled to an award of reasonable attorney fees., pursuant to N.C. Gen. Stat. § 75-16.1;

25. A finding of separate violations for every week of ongoing violations pursuant to N.C. Gen. Stat. § 75-8;

26. And for such other and further relief as this Court deems just and proper.

**TODAY** is August 29, 2021.

                             **COLLUM & PERRY**

By: */s/ M. Shane Perry*
M. Shane Perry
NC Bar Number: 35498
109 W. Statesville Ave.,
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile: 704-663-4178
shane@collumperry.com
*Attorney for Plaintiff*