UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 21-CV-667

| | |
|---|---|
| **MOHAMED ALASSANE KARZO**<br><br>**Plaintiff**<br><br>v.<br><br>**MATADOR RECORDS, Inc.,<br>DOMINO PUBLISHING COMPANY of<br>AMERICA, Inc., REDEYE, Inc.,<br>M'DOU MOCTAR,<br>MAHAMADOU SOULEYMANE,<br>MICHAEL COLTUN,<br>AHMOUDOU MADASSANE, and<br>SOULEYMANE IBRAHIM**<br><br>**Defendants** | **MEMORANDUM IN SUPPORT OF<br>PETITION FOR CERTIFICATION<br>AND MOTION TO STAY** |

**COMES NOW** Plaintiff, by and through counsel, pursuant to 28 U.S.C. § 1292(b) and in response to the Court's Order entered September 14, 2022 (Doc.37) (the Order) respectfully submits this petition for certification of the interlocutory order, and for a stay of the proceedings.

In the Order this Court granted the Defendants' Rule 12(c) motion based on its conclusion that all Defendants' copyright infringements such as publication and distribution were traceable to Mahamadou Souleymane's performing Mr. Karzo's music prior to Mr. Karzo's registration of his copyright. Mr. Karzo will demonstrate herein to the Court that, pursuant to 28 USC § 1292(b), this "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id*.

The questions that Mr. Karzo would present to the Court of Appeals are: 1) how must the District Court determine that a subsequent infringer is a licensee; 2) is that determination a question

of law or fact; 3) are violations of all of the separate rights protected by 17 U.S.C. § 106 traceable to any singular infringement of rights pursuant to § 106; 4) is the determination of whether a post-registration infringement is traceable to a pre-registration infringement a question of law or fact; 5) are production and distribution as infringements pursuant to § 106 traceable to public performance as an infringement pursuant to § 106; and, 6) does the policy of *Bouchat v. Bon-Ton Dep't Stores, Inc., 506 F.3d 315 (4th Cir. 2007)* bind a person who is outside the territorial control of the United States. These questions are not presented in the order of importance, but in logical sequence. The most pressing question, and the issue that carries the best reasons for certification of an interlocutory appeal, is the issue of traceability, as explained below.

The Court may note that the original *Bouchat* case upon which the *Bouchat* line originated, and upon which this Court predominately based its opinion, was the product of an interlocutory appeal that was certified to the Fourth Circuit and which the Court of Appeals chose to hear. "[W]e affirmed in an interlocutory appeal." *Bouchat v. Bon-Ton Dep't Stores, Inc*., 506 F.3d 315, 324 (4th Cir. 2007). This interlocutory order should likewise be heard because, as demonstrated below, the Fourth Circuit has found that questions of law in this case have not been resolved.

**LICENSEES**

At the outset the Court has determined that the copyright infringements of the Defendants other than Mahamadou Souleymane are traceable to the infringements by Souleymane. However, the Defendants did not argue that they were licensees in any pleading, nor did they prove up any evidence to demonstrate licensure. It may have been implied, but never claimed. The Court took no steps to determine licensure but assumed it was true and disallowed the statutory penalties and award of attorney fees as guaranteed in 17 U.S.C. §§ 504 and 505.. Without any evidence or even a claim by the Defendants that they were licensees, the Court cannot make this determination, so

2

the effect of *Bouchat* cannot bear on this motion by the Defendants because *Bouchat* dealt specifically with the relationship of licensees to the copyright infringer.

If the Defendants are not licensees, they do not have the defense of traceability by licensees as found in the Order. Because licensure was never determined, the Defendants' Rule 12(c) motion should be denied.

## LICENSE IS A DETERMINATION OF FACT

Because license is a contractual issue, and a contract must be proved by evidence, licensure is a question of fact to be determined by a trier of fact. Mr. Karzo has exercised his right to a trial by jury and so this issue of fact must be determined by a jury.

> It is "well settled" under North Carolina law that a "valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." *Maxwell v. Michael P. Doyle, Inc.*, 164 N.C.App. 319 (2004), *quoting Northington v. Michelotti,* 121 N.C.App. 180 (1995). Whether there is mutual assent and a "meeting of the minds" is a question for the trier of fact. *See, e.g., Creech v. Melnik*, 347 N.C. 520 (1988).

*In re Hering*, 2010 WL 4366193, at *6 (Bankr. E.D.N.C. Oct. 28, 2010). Without a jury determination that the Defendants other than Souleymane were licensees, the Court cannot determine that they were licensees or find that their actions were traceable as licensees. For this reason, the Defendants' Rule 12(c) motion should be denied.

## TRACEABILITY IS DISTINCT FOR SEPARATE STATUTORY PROVISIONS

The Order determined that all the Defendants were licensees and their various post-registration infringements of Mr. Karzo's copyright were traceable to Mohamadou Souleymane's infringement prior to registration. This does not comport with the letter or spirit of copyright law. 17 U.S.C. § 106 provides a list of exclusive rights enjoyed by a copyright owner. These rights are spelled out separately:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

*Id*. These separate protections are infringed distinctly because the actions taken to infringe each subsection are distinct. Because of its reasoning, the Order would allow a pre-registration infringement of the rights protected by § 106(1) to be traceable to a post-registration infringement of § 106(5). This would be non-sensical and unjust, because if an act is not a pre-registration performance that infringes a right protected by § 106, it is not traceable as a pre-registration infringement and is irrelevant to the analysis. If Souleymane's pre-registration performance is determined to not be an infringement, it is not traceable as an infringement to any post-registration infringement. Put another way, just being an infringement of one subsection of § 106 does not make it traceable to infringement of all subsections of § 106.

It is not currently known if any of the Defendants have reproduced Mr. Karzo's original recordings and published them. The Order would allow a future copyright infringer to take Mr. Karzo's recordings, reproduce and publish them, and that infringer would be swept into the group of licensees with the defense of traceability to Mahamdou Souleymane's public performance of Mr. Karzo's work. A new copyright infringer would be no different than Matador Records, Inc. (Matador), Domino Publishing Company of America, Inc. (Domino), and Redeye, Inc. (Redeye),

4

Defendants who were not present and took no part in the original public performance by Souleymane. Souleymane could license to a new infringer tomorrow and they would have the defense of traceability. This cannot possibly be the intent of copyright law.

*Bouchat* did not stand for the proposition that a copyright infringer who can trace their infringement to a time prior to registration has an open door to the world to license the copyrights material into all other forms of infringements without concern that new infringers may have to pay statutory penalties or attorney fees for infringement. This is a calculation that may lead to new infringements going forward from the Order based on a risk/benefit analysis. This is antithetical to copyright protection and the reason for granting this Petition.

> an interlocutory order may be appealable pursuant to § 1292(a)(1) if the appellant can show that this order of the district court might have a serious, perhaps irreparable, consequence, and that the order can be effectually challenged only by immediate appeal." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 84 (1981);

*In re Braxton*, 258 F.3d 250, 257 (4th Cir. 2001). The Second Circuit agrees that certification should be granted if there is "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *O'Bert ex rel. Est. of O'Bert v. Vargo,* 331 F.3d 29, 41 (2d Cir. 2003).

Just such an injustice was described in the Complaint. The Defendants have taken the Plaintiff's song and have added lyrics that support the terrorist Muammar Gaddafi. *Complaint*, ¶ 67 (Doc. 1). The Defendants continue to tour the world publicly performing the infringing work. The more this infringement continues, the more the Plaintiff's good will in the song is destroyed. The Fourth Circuit has found that the diminution of good will deserves remedy in equity. *See, Lone Ranger v. Cox*, 124 F.2d 650, 652–53 (4th Cir. 1942). This petition should be granted to bring stronger sanctions against the Defendants who continue to infringe and, more importantly, to limit

5

the ongoing damage to the goodwill of Mr. Karzo's song, which was never intended to promote terrorism.

*Bouchat* explained why infringers of a copyrighted work were not distinguished the way separate violations should be:

> Because [17 U.S.C. § 501] does not distinguish between "one infringer ... liable individually" and "two or more infringers ... liable jointly and severally," *id*., we must treat these two categories of infringers identically when assessing their statutory damages liability.

*Bouchat, 506* F.3d, at 331. Because the statute does not distinguish between infringers, multiple licensees are considered together. In *Bouchat*, unlike the case at bar, the Plaintiff claimed that all the Defendants actions were the same pre- and post-registration, so all Defendants infringed the same protections under § 106.[1]

But § 106 <u>does</u> distinguish types of protection and we <u>can</u> separate types of infringement for traceability. Only Souleymane only publicly performed Mr. Karzo's music prior to registration. He later distributed derivative works through Matador, Domino, and Redeye, but Matador, Domino and Redeye did not infringe in any way prior to registration. Moreover, Matador, Domino and Redeye have not publicly performed Mr. Karzo's music or any derivative thereof. Finding that distribution and publication are traceable to public performance is simply not factual. The Fourth Circuit has recognized this problem in Judge Niemeyer's concurrence in *Bouchat*:

> But absent Bouchat's concession, made for understandable strategic reasons, we would face almost irresolvable issues presented by this multi-party licensing infringement case. While the Copyright Act addresses adequately the single infringement of a work, it is not susceptible to a straightforward application when multiple infringements by multiple parties arise from a single work.

---

[1] *See, Bouchat v. Baltimore Ravens, Inc*, 1:12-CV-01905-MJG, (D. Md., 2012), *Complaint*, p.2 (Doc. 1).

*Bouchat,* 506 F.3d, at 332. The Fourth Circuit tells us that infringements are separate. If nothing else in this case does, this problem presents an issue that "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 USC § 1292(b). The Fourth Circuit found that:

> In granting an author a separate 'exclusive right' in every reproduction, derivative preparation, distribution, performance, display, and digital audio transmission of his work, *see* 17 U.S.C. § 106, the Act gives the author a right to institute an action <u>for each infringement</u> of each exclusive right.

*Bouchat,* 506 F.3d, at 331 (emphasis supplied). *Bouchat* clearly holds that each act protected under § 106 is separate; therefore one act is not traceable to another act. This is controlling law and the requisite substantial grounds for difference of opinion has been recognized by the *Bouchat* Court.

  Mr. Karzo would also remind the court that he has filed *in forma pauperis* as he earns only a few dozen dollars per month in U.S. Dollars. A New York Federal Court considered this to be grounds for granting a petition. "In addition, the plaintiffs are indigent and therefore are also anxious to avoid a trial on the merits. Thus, it appears quite likely that either a reversal or an affirmance of the Court's ruling will result in the termination of this litigation." *Johnson v. Soundview Apartments Hous. Dev. Fund Co.*, 647 F. Supp. 1410, 1414 (S.D.N.Y. 1986).

  While Mr. Karzo believes that every issue raised herein meets the requirements of § 1292(b), the Supreme Court has held that, so long as one issue is ripe for interlocutory consideration, all issues can be considered, because appellate courts "may address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court." *BP P.L.C. v. Mayor & City Council of Baltimore*, 209 L. Ed. 2d 631 (2021). An interlocutory appeal would settle all of these issues in an area that does not receive the benefit of a lot of controlling law, but this Court need only certify for appeal one issue.

Finally, the Order recognizes that "Some 'exclusive rights' of the copyright owner include the right 'to prepare derivative works based upon the copyrighted work' and 'to perform the copyrighted work publicly.' *Id*. § 106(2)." *Order*, pp. 9-10. Indeed, these <u>are</u> exclusive rights, and separate as well. They must also be protected separately, and infringements of the copyright must be proved up separately by separate elements. It is incumbent upon Mr. Karzo to demonstrate the elements of publication as well as performance, two infringements which have separate elements. If these are so distinct that one might be proved while the other is not, certainly these activities cannot trace to the same pre-registration infringement activity. For these reasons, the Defendants' Rule 12(c) motion should be denied.

## TRACEABILITY IS A QUESTION OF FACT

Whether an act is traceable to another act is a question of fact to be determined by the trier of fact. The Defendants put no evidence before the Court to prove that the post-registration infringements were traceable to the pre-registration infringements. And if it had, these determinations would have been questions of fact for the jury.

This argument is made in the shadow of Supreme Court precedence which holds that we do not "know of any other rule or principle that will unerringly distinguish a factual finding from a legal conclusion" *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982), and "The conclusiveness of a 'finding of fact' depends on the nature of the materials on which the finding is based." *Baumgartner v. United States*, 322 U.S. 665, 670–71 (1944). Title 17 is silent on how to determine traceability, so there exists no legal standard. Without a legal standard, there can be no legal question, since the Court cannot apply a legal standard that does not exist. The only choice left is a question of fact.

Plaintiff's Counsel found no cases on tracing pertaining to copyright law, but other cases of tracing have determined that tracing is a question of fact. *See e.g., In re Alamance Knit Fabrics, Inc.,* 251 B.R. 293, 296 (M.D.N.C. 1999) (tracing money is a question of fact) and *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) (tracing conduct to injury is a question of fact). For this reason, the Defendants' Rule 12(c) motion should be denied.

**PRODUCTION AND DISTRIBUTION ARE NOT TRACEABLE TO PERFORMANCE**

The Order found that:

> The formal recording of a song for purposes of an album is fairly "traceable" to the initial making and performance of that same song since absent such performances, the album may never have come into existence.

*Order*, p. 8. This determination was made without evidence or support in the law. Factually, a "performance" of a song is not necessary to record an album and publish it. It is important to remember that the Court is considering the traceability of a pre-registration infringement to a post-registration infringement. A non-infringing performance cannot be traceable to an infringement activity. The traceability must be based on a pre-registration infringement pursuant to § 106. If reproduction (protected by § 106(1)) and distribution (protected by § 106(3)) were inextricably linked to public performance (protected by § 106(4)), then there could never be separate infringements of §§ 106(1), (3) and (4), and *Bouchat* is clear that this cannot be the case. Moreover, doing so would make § 106(4) a nullity in § 106(1) and (3) cases and the Supreme Court has expressed a "deep reluctance" to interpret statutory provisions "so as to render superfluous other provisions in the same enactment." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990). *See also, Ratzlaf v. United States*, 510 U.S. 135, 141 (1994).

The Order found a public performance subject to § 106(4) is a prerequisite for production of an album, but factually this is not so. As an example, Bruce Springsteen recorded the album

9

*Nebraska* in his basement on a four-track recorder with no audience and having never publicly performed the songs previously. *Nebraska*, his sixth studio album, was released on September 30, 1982. It went Platinum in the United States and Australia and Gold in the United Kingdom and Canada. Of that album, Springsteen said, "I got a little Teac four-track cassette machine, and I said, I'm gonna record these songs, and if they sound good with just me doin' 'em, then I'll teach 'em to the band." Kurt Loder, *The Rolling Stone Interview: Bruce Springsteen*, Rolling Stone, December 6, 1984, at 18.[2] It was entirely unnecessary that Springsteen publicly perform the songs on *Nebraska* (in a way protected by § 106(4)) before he recorded them into an album, and he did not. The Order reaches too far. For this reason, the Defendants' Rule 12(c) motion should be denied.

## UNITED STATES LAW AND POLICY DOES NOT BIND A FOREIGN CITIZEN

Mr. Karzo has argued to the Court that American policy cannot reach an impoverished man who lives in Niger, speaks no English, and has no access to our legal system. It is as fundamentally unfair as the imagination can conceive and a basis in itself for interlocutory appeal. "As a general matter, the Copyright Act is considered to have no extraterritorial reach." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 306 (4th Cir. 2012). If the law does not reach Mr. Karzo, *a fortiori* the incentive created by the law cannot reach him. And this is common policy in American jurisprudence:

> It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. This canon of construction is a valid approach whereby unexpressed congressional intent may be ascertained. It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord.

---

[2] This article is re-published at https://www.rollingstone.com/music/music-news/the-rolling-stone-interview-bruce-springsteen-on-born-in-the-u-s-a-184690/

*E.E.O.C. v. Arabian Am. Oil Co*., 499 U.S. 244, 248 (1991) (internal citations and punctuation omitted). Congress could not possibly have meant for its intent to be communicated to, and understood by, a person in the Plaintiff's circumstances. And the Defendants' have not demonstrated, in light of *Arabian Am. Oil Co*., that this interpretation of congressional intent under 17 U.S.C. § 412 does not conflict with Nigerien law. It well might. For these reasons, the Defendants' Rule 12(c) motion should be denied. Moreover, given the gravity of an international conflict, it is appropriate to seek the guidance of the Court of Appeals to resolve this issue.

**WHEREFORE** the Plaintiff respectfully petitions this Court for certification of an interlocutory appeal to the Fourth Circuit Court of Appeals on the Order, to stay this action until the resolution of the appeal, and for any other relief this Court finds just and proper.

**TODAY** is September 26, 2022.

                                        **COLLUM & PERRY**

By:    */s/ M. Shane Perry*
        M. Shane Perry
        N.C. Bar NO. 35498
        109 W. Statesville Ave.
        Mooresville, NC 28115
        704-663-4187
        shane@collumperry.com
        *Attorney for Plaintiff*

| | |
|---|---|
| **MOHAMED ALASSANE KARZO**<br><br>**Plaintiff**<br><br>v.<br><br>**MATADOR RECORDS, Inc., DOMINO PUBLISHING COMPANY of AMERICA, Inc., REDEYE, Inc., M'DOU MOCTAR, MAHAMADOU SOULEYMANE, MICHAEL COLTUN, AHMOUDOU MADASSANE, and SOULEYMANE IBRAHIM**<br><br>**Defendants** | **MEMORANDUM IN SUPPORT OF PETITION FOR CERTIFICATION AND MOTION TO STAY** |

### CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that, pursuant to LR 7.3(d)(1), the foregoing does not exceed 6,250 words.

**TODAY** is September 26, 2022.

>  /s/ M. Shane Perry
> M. Shane Perry
> NC Bar No: 35498
> 109 W. Statesville Ave.,
> Mooresville, NC 28115
> Telephone: 704-663-4187
> Facsimile: 704-663-4178
> shane@collumperry.com
> *Attorney for Plaintiff*

12

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Case No. 21-CV-667

| | |
|---|---|
| MOHAMED ALASSANE KARZO<br><br>**Plaintiff**<br><br>v.<br><br>MATADOR RECORDS, Inc.,<br>DOMINO PUBLISHING COMPANY of<br>AMERICA, Inc., REDEYE, Inc.,<br>M'DOU MOCTAR,<br>MAHAMADOU SOULEYMANE,<br>MICHAEL COLTUN,<br>AHMOUDOU MADASSANE, and<br>SOULEYMANE IBRAHIM<br><br>**Defendants** | **MEMORANDUM IN SUPPORT OF<br>PETITION FOR CERTIFICATION<br>AND MOTION TO STAY** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically via CM/ECF with the United States District Court, Middle District of North Carolina, with notification being sent electronically to all counsel of record.

**TODAY** is September 26, 2022.

/s/ M. Shane Perry
M. Shane Perry
NC Bar No: 35498
109 W. Statesville Ave.,
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile: 704-663-4178
shane@collumperry.com
*Attorney for Plaintiff*